Good morning, this is Tom Hartzell on behalf of appellant Gregg Johnson, may it please the court. Mr. Johnson was prosecuted for three counts of false statements. The third count in which he applied for a technical enforcement officer position is a little different than the first two counts because by the time he had applied for this position, the Homeland Security, according to the witness Chad Plants, already knew or certainly suspected that the application contained false transcripts and faked educational attainments. Now, there's an argument here both about the jury instruction and about the Rule 29 motions that most strongly apply to counts one and two. Count three, I don't believe that there could be materiality, that there could even be an effect or a potential effect on an agency's decision when the agency knows in advance that there is that misrepresentation in the resume. The agency knowing this and going ahead and doing something about it, it takes away any impact that that possible educational falsity could have had in the resume. That being said, I believe the Rule 29 motion on the count three is perhaps extraordinarily strong because it's an impossibility that they could decide to hire someone based on a falsehood that they already knew about. But isn't the law pretty clear that an actual impact is not required? Well, the law is very clear that an actual impact is not required. It has to have potential impact, a tendency to impact or affect an agency decision. But the law is also very clear, Your Honor, that the impact or effect has to be of the decision at which the false statement is of that pay grade. In count three, by that time, the false statement having been discovered, the only decisions the agency would be making would be when to fire him, whether to prosecute him. At that point, there is no longer a false statement. It was discovered. It was false, but the agency knew full well what it was doing when they ostensibly hired him for that job. As Chad Plant says on day two of trial, we wouldn't have hired him anyhow. By then, we already knew that the transcripts were false. When you look at materiality, materiality in the overwhelming authority of the Supreme Court and of the circuits is a statement that is directed at a particular decision. In this case, we had to start off in count one, the application for a hero position, a human exploitation rescue operative. This was a volunteer position. Everyone who applied for it got it. The education wasn't necessary at all for this position. As a matter of fact, it wasn't the decision whether or not to give Johnson this internship with Hero because it wasn't a necessary component. What the government argued finally in its closing arguments after it convinced the trial court to expand the model instruction to include the line from service deli that it's not necessary that it make an effect, just that it has the potential to make an effect. I paraphrase. I'm not quoting exactly. In the closing arguments, what the government said again and again, I called it a red light, a gong, that once they discovered the lie, they would have to fire Johnson. That's an extrinsic application here. It's not that they would have hired him because they believed he had a master's degree and a graduate degree that he didn't have. It would get to this point where, oh, if we discovered it, we would have to fire him. That's not the sort of agency decision that 18 U.S.C. 1001 is directed at. It would be claiming... rather than judicial? The legislature has said what it said about materiality, and the Supreme Court and circuit courts have interpreted that, and I don't believe the legislature can make any more specificity in the particular penal statute. I mean, again and again, it said it has to be the decision at which the falsehood is directed. In this case, that was hiring, and the Ninth Circuit model instruction, it covered that very well, and your honor, no, I don't think this is a legislative fix. I believe what the government did in this case is once they got the instruction that it could be a potential impact, then they argued that the impact was if they discovered it, they would have to fire him. They called it the gong, the red light. If he lied, he could no longer work here. That wasn't the false statement that affected the government, that affected the agency decision to fire him. That was the fact that they caught him in a lie. The government even argued that, oh, not every false statement is material. For example, they said, if he put down my favorite color is blue and his favorite color is black, that wouldn't be actionable, but yet by the government's very logic, if they discovered a lie on a job application, even if the lie was his favorite color, then he would have to be fired. He lied on the application. Plant said this final job, the technical enforcement officer, the TEO, it's referred to as, would require Johnson or whoever has that position to testify in court, and someone who lied on their application wouldn't be able to testify. They'd be impeachable. Counsel, is this your argument on materiality, and you presented this to the jury, correct? As much as possible, but I was limited by the court's expansion of its definition, and I quoted at some length in my brief, the discussion between the court, the government, and Johnson about what materiality meant, but the court decided that whatever decision in the future could be made, that this particular, that it was material. I could refer the court to that, whoops, if I could find it in my two minutes and 18 seconds. In looking at the fourth prong of the test, it does not appear to me, this is the trial court, that that restricts the decision or the activities just to the decision, whether or not to hire the defendant in this case or not. It does appear, it looks to me like that fourth prong of the test is sufficiently broad so that the next witness should be able to testify as to what would natural,  the agency's decisions or activities, so I'm going to allow on a limited basis, government attorney, I'm going to allow you to get into that with your next witness. That is an expansion beyond the accepted definition of materiality, which even though I was arguing to the jury that these false statements, these false resumes aren't material, the government, given that latitude, was able to say that yes, based on this instruction, the firing, the subsequent firing of him is the gong, the red light in the room here, the major impact of these false statements and also that he couldn't testify if he called on to testify according to plans that would have been one of his duties and someone who had lied on an application wouldn't be able to testify, so it was the fact of the lie rather than the content of the lie that the government was relying on and what the trial court allowed as being proof of the materiality and that is not the way the Supreme Court in Congress, the Supreme Court in any of the cases, Godine, interprets materiality. It has to be the decision at which the false statement is directed, not some subsequent and collateral consequence years down the line. Congress, as you remember, it was the date of birth of the applicant for an immigration benefit and that was found by the Supreme Court not to be material. I've used up my time, any questions, of course, I'm happy to entertain, but I don't want to argue over time here. Thank you, counsel. I think, I believe we will hear from Ms. Clemons by telephone. Yes, your honor. Good morning, Shelley Clemons on behalf of the U.S. Attorney's Office for the District of Arizona. I apologize for appearing by phone. I had some last minute technical difficulties this morning. Your honor, the defense starts by arguing whether or not the government had proved materiality in regard to count three, the technical enforcement officer position, and I believe that defense counsel has confused some of the testimony in that case. In this particular matter, there was ample testimony that the statements, the false statements given by the defendant were material to the hiring decision that matter. As Agent Plant testified, the witness, Agent Plant, said they did not know the statements were false. They suspected them that they were false, but they had not made that final decision yet, and so until they confirmed the suspicions, and this is at page 41 on the March 6th transcript, he certainly could have been hired for the position, and in fact, these particular false statements that he made regarding this higher education that he did not possess really were material because while it was called non-competitive, the defendant was actually competing against other VRA candidates, and therefore, he has, as Agent Plant put it, these degrees would have pushed his resume to the top of the stack because with those degrees, it would have demonstrated characteristics like hard work, willingness to learn new things, ability to grasp complex issues, ability to finish projects. Those things would have made him a more attractive candidate because those are characteristics that would have been good for this job. As for count one and count two, again, the government presented more than ample evidence of materiality such that any rational juror could have found those elements beyond a reasonable doubt. In count two, Misdell testified that while this was a conversion from the hero thing, the hero job, they did have to make a decision about salary, whether he's going to be a GS-9 or not, and because he had put those false statements regarding his GS-9. Had he not had those degrees on there, an HR specialist, in this case it was her, but it could have been anybody else, would have had to investigate his background and characteristics to determine whether or not he qualified for a GS-9, and that right there is sufficient to show materiality. It's not whether it actually affects the decision, it's whether the intrinsic characteristics of the false statement are capable of causing an influence or not the actual, whether it actually does so or not, and not the magnitude of the decision. So, since the agency forgo doing an investigation into his background to determine if he qualified for GS-9, that right there, the objective qualification qualifies. And then as for the hero degree, or the hero internship, the defendant testified at trial that he didn't believe that he'd done anything wrong because the degrees weren't required, that's what we've been told. So, if it was required, somehow that didn't make it material. But if you'll note on the warnings from USAJOBS, it not only says you can't do any false statement and that can result in prosecution, but it specifically references false statements on education experience, and that right there demonstrates to any reasonable person that the government certainly believed that that statement was material to the job. And of course, truthfully stating what your background is is material for any of these three positions. These jobs all required top-secret clearance, the defendant was analyzing confidential and sensitive information, and there was a possibility of having to testify by not being truthful on his application regarding his education. The defendant put himself in a position of not being qualified to testify or being able to do his job being subject to impeachment. As to the defendant's argument regarding the jury instruction, the defendant first argues that the court erred in giving the government's requested jury instruction. However, this should be reviewed under plain error because the defendant raises a different argument now than what he raised on appeal. But in this particular case, under any type of error, there can be no error because the language the government requested that the false statement need not have actually influenced the agency and the agency may not rely on the material is a legally correct statement. And as such, as this court instructed in Kane and Toda Borick, a jury instruction cannot be plainly erroneous, is legally correct, and does not misinform as to the proper elements. In this particular matter, that is the legally correct statement as set forth in Service Valley. It's not whether it actually influences, it's whether or not it has the capability of doing so. And in this particular case, this jury instruction was legally correct. In addition, it does not open the door to any decision in the future ad infinitum any more than the defendant's requested language restricted it to just the hiring decision. However, the government did not argue to the jury that the fact that he could have been fired down the road was relevant to materiality. In fact, what the government argued, when we're talking about the red arrow, the gong statement, the defense raised was, if the agency had known these statements were false, they would not have hired him. It's so the government argued it back to the hiring decision. And they argued that with all three of the positions. Because of the the sensitive nature of this job and then need to testify, the government would not have been able to hire him if they'd known he had put false statements on there. And the fact of the matter is, given the fact that the defendant knew that degrees were not necessary for this position, it begs the question, then why did he put the false statements on there? Because he knew that would make him a more attractive candidate. So therefore, the defendant certainly thought that getting putting these statements down material that these would actually influence the agency and looking at him as a more that the defendant argues impossibility, but it's this court noted in Salinas, Iran and King and this morning, it's not whether it's possible, not whether it actually changed it, but whether it was possible, what is the intrinsic capability, the government would submit that the jury instructions that were given by the court as a whole were not misleading. And they were more than adequate to guide the jury. And the government's argument did not expand this decision in any matter past the initial hiring decision. As such, we would ask you to affirm the conviction. If the court has any questions or doesn't have any questions, I will submit at this time. No, I don't believe we have any questions. Thank you very much, Ms. Clemens. Mr. Hartzell, I'll give you a minute for rebuttal. The government's wrong when it talks about plain error review. The cases they quote are really not on point here. And in fact, one, Fucini, they managed to quote a version that's been overturned by en banc review. And even now, the government is saying it's not the claim that he had more education than he did. It's the claim that he lied, that's material. And that is extrinsic to the actual statement itself. The falsity of the statement is not what's material, it's what is the statement. And this is why this conviction needs to be reversed and it needs to be sent back to the District of Arizona with instructions on accurately defining materiality. Thank you. Thank you very much, counsel. U.S. versus Johnson is submitted. We have previously submitted U.S. Granada, Saldana.
judges: Wardlaw, Clifton, Hillman